1

Jesse L. Young (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.

2

141 E. Michigan Ave., Ste. 600
Kalamazoo, Michigan 49007

3

Telephone: 269-250-7500
jyoung@sommerspc.com

4

5

Jacqueline Mendez Soto, 022597
BARTON MENDEZ SOTO PLLC

6

401 W. Baseline Road, Suite 205
Tempe, Arizona 85283

7

Telephone: 480-550-5165
jacqueline@bartonmendezsoto.com

8

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

10

11

| | |
|---|---|
| **Alicia Bonner**, individually, and on behalf of others similarly situated, | Case No.: |
| Plaintiff, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL REQUESTED |
| **Verra Mobility Corporation**, and **Impact Technology Recruiting Inc.**, | |
| Defendants. | |

12

13

14

15

16

17

18

Plaintiff, Alicia Bonner ("Plaintiff"), hereby brings this Collective/Class Action

19

Complaint against Defendants, Verra Mobility Corporation ("Defendant Verra Mobility")

20

and Impact Technology Recruiting Inc. ("Defendant Impact Technology") (collectively,

21

"Defendants"), and states as follows:

**INTRODUCTION**

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, The Arizona Minimum Wage Act, A.R.S. §§ 23-363, *et seq.* ("AMWA"), the Arizona Wage Act, A.R.S. §§ 23-350, *et seq.* ("AWA"), and common law.

2.      According to Defendant Verra Mobility's website, it "is a global leader in smart mobility" and "develop[s] technology-enabled solutions that help the world move safely and easily."[1]

3.      Defendant Verra Mobility holds itself out as "solv[ing] a diversity of transportation challenges[,]" which include assisting with "traffic enforcement for cities and school districts[;]" "tolling and violations management for commercial fleets[;]" and "end-to-end parking solutions for universities and cities."[2]

4.      Defendant Verra Mobility relies on one or more staffing agencies, including Defendant Impact Technology, to locate qualified employees.

5.      In providing the above described services, Defendants employed hourly employees who worked in Defendant Verra Mobility's brick-and-mortar call centers across the United States. Defendants used a number of titles (including, but not limited to,

---

[1] https://careers.verramobility.com/job/culver-city/processing-specialist-i/41236/51814261264 (last visited Oct. 1, 2023).
[2] https://careers.verramobility.com/ (last visited Oct. 1, 2023).

Payment Processing Specialist I, Processing Specialist II, and Payment Customer Care Specialist) to refer to their hourly employees who field inbound customer correspondence and calls and handle toll, parking, rental car, and other fee/violation processing and payments (collectively referred to herein as "Hourly Employees").

6.    Defendants classified their Hourly Employees as non-exempt and tasked them with the primary job duty of providing customer service to Verra Mobility customers.

7.    Defendants employed Plaintiff as an Hourly Employee.

8.    The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Hourly Employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

9.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

10.    More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-

---

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Oct. 6, 2023).

related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

11.     Defendants violated the FLSA and common law by systematically failing to compensate their Hourly Employees for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendants' timekeeping system, which resulted in Hourly Employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

12.     More specifically, Defendants failed to compensate Hourly Employees for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendants' timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each shift.

13.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

14.    At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

16.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

17.    Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' Hourly Employees engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

18.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

19.    This Court has personal jurisdiction over Defendants because Defendants conduct business within the state of Arizona, employ individuals within the state of

Arizona, are registered with the Arizona Corporation Commission, and maintain their principal place of business in the state of Arizona.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants employ Hourly Employees in this District, conduct business in this District, and a substantial portion of the events that give rise to Plaintiff's claims occurred in this District.

## **PARTIES**

21.     Plaintiff Alicia Bonner is a resident of Tempe, Arizona and worked for Defendants as a non-exempt Hourly Employee in Defendant Verra Mobility's Mesa, Arizona brick-and-mortar call center from approximately May 3, 2023 through August 15, 2023. Defendants compensated Plaintiff through the payment of an hourly rate, most recently $20.00 per hour. Plaintiff Bonner signed a consent to join this collective action, which is attached as **Exhibit A**.

22.     Additional Collective members were or are employed by Defendants as Hourly Employees during the past three (3) years and their consent forms will also be filed in this case.

23.     Defendant Verra Mobility Corporation is a Delaware corporation (File No. 6124788) headquartered in Mesa, Arizona. Defendant Verra Mobility maintains its principal place of business at 1150 N. Alma School Rd., Mesa, Arizona 85201.  Its registered agent for service of process is listed as 3800 N. Central Ave., Ste. 460, Phoenix, Arizona 85012.

24.     Defendant Impact Technology Recruiting Inc. is an Arizona corporation (Entity ID 17678972) headquartered in Phoenix, Arizona. Defendant maintains a registered agent for service of process listed as Curtis S. Hensley, 18325 North Allied Way #210, Phoenix, Arizona 85054.

## GENERAL ALLEGATIONS

25.     Prior to hiring prospective Hourly Employees, Defendant Impact Technology or Verra Mobility provided them with a written offer setting forth the job requirements and hourly rate of pay.

26.     Defendants maintained documentation of the promised wage for each Hourly Employee including, but not limited to: offer letters, paystubs, and/or payroll records.

27.     Plaintiff received an offer from Defendant Impact Technology to work as an Hourly Employee for Defendants, and she accepted the offer with the understanding that her base hourly rate would be paid for all hours worked. As explained herein, neither Defendant Impact Technology nor Defendant Verra Mobility paid Plaintiff and other Hourly Employees for all hours worked as promised.

28.     Plaintiff performed under the agreement by carrying out her job duties and responsibilities. More specifically, Plaintiff handled rental car fine and violation payments; answered customer inquiries, as well as problems they had paying their fines/violations; and advised Defendant Verra Mobility's clients' customers of fines and payments coming due. To provide the aforementioned customer service, Plaintiff utilized

Defendant Verra Mobility's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

29.     Defendants paid their Hourly Employees at varying hourly rates.

30.     Defendants' Hourly Employees, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

31.     While Defendants have access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

32.     Defendant Verra Mobility provided training to Hourly Employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the shift how to log out at the end of the shift; attendance, schedule and call quality expectations; and Defendants' policies. The training that Defendant Verra Mobility provided to all of its Hourly Employees was substantially, if not entirely, the same.

33.     At all relevant times, Defendants controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

34.     Defendants required Plaintiff and all other Hourly Employees to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

35.     Defendant Verra Mobility instructed Plaintiff and other similarly situated Hourly Employees to be "call ready" the moment their scheduled shift started. This required Defendant Verra Mobility's Hourly Employees to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendants Hourly Employees often experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

36.     Additionally, Defendant Verra Mobility maintained schedule adherence and attendance metrics pursuant to which it monitored the Hourly Employees' clock-in times in relation to their start-of-shift time, as well as the time the Hourly Employees went into a "ready" status. Defendant Verra Mobility enforced these policies and procedures by routinely evaluating, and at times disciplining, Hourly Employees. This discipline included, but was not limited to, termination.

37.     Thus, Defendant Verra Mobility forced its Hourly Employees to perform their boot-up and login process before the start of their shifts and before they were allowed to clock in.

38.     All of Defendants' Hourly Employees used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the Hourly Employees' work and they could not perform their jobs without them.

39.     Defendants' Hourly Employees also performed off-the-clock work when

they returned from lunch and prepared themselves to be call ready the moment their meal periods concluded.

40.     Similarly, Defendants' Hourly Employees, including Plaintiff, performed work off-the-clock after their scheduled shifts and after clocking out of Defendants' timekeeping system when they logged out of the programs and applications that they utilized during their shifts and shut down their computer.

41.     As a result of the off-the-clock work described herein, Plaintiff and other Hourly Employees were unlawfully deprived of approximately twenty-one (21) to twenty-six (26) minutes of compensation every shift.

42.     At all relevant times, Defendants were able to track the amount of time Plaintiff and other Hourly Employees spent in connection with their off-the-clock activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Hourly Employees for the off-the-clock work they performed, thus breaching their agreements with the Hourly Employees.

43.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

44.     Despite knowing Plaintiff and all other Hourly Employees performed this pre-, mid-, and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other Hourly Employees booted-up

and logged into their computers each shift, along with their clock-in/out times in the timekeeping system.

46.     Upon information and belief, Defendants also possess, control, and/or have access to information and electronic data indicating when Plaintiff and all other Hourly Employees experienced technical issues.

47.     Because Defendants required their Hourly Employees, including Plaintiff, to perform work off-the-clock, the hours tracked in Defendant Verra Mobility's timekeeping system are inaccurate representations of the total amount of time Hourly Employees spent working for Defendants. Thus, the hours reflected on the Hourly Employees' paystubs are also inaccurate representations of the hours they actually worked.

**A. Pre-Shift Off-the-Clock Work**

48.     The off-the-clock pre-shift process took approximately ten (10) to fifteen (15) minutes per shift. Specifically, before each shift Hourly Employees were required to undertake the following essential work tasks:

a.  Turn on/wake up their computer;

b.  Log into Microsoft Windows using a username and password;

c.  Open Google Chrome;

d.  Open Gmail;

e.  Open Microsoft Teams – the application Defendants' Hourly Employees used for meetings and internal communications;

f.  Open various scripts Hourly Employees had to use and/or read when

11

answering customer inquiries and correspondence;

g.  Open Defendant Verra Mobility's phone system;

h.  Log into applications unique to the Defendant Verra Mobility client for whom the Hourly Employee worked, for example, Enterprise, Alamo, Hertz, etc., using a username and password; and

i.  Clock into the timekeeping system.

49.    Defendants' Hourly Employees had to complete this process before the start of their scheduled shifts and before fielding calls/answering correspondence. Consequently, the Hourly Employees had to arrive to work approximately ten (10) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

50.    Defendants' Hourly Employees were not compensated for all of this time because Defendants prohibited Hourly Employees from clocking into its timekeeping software until five (5) minutes before the start of their scheduled shift and the described duties took longer than five (5) minutes each day.

51.    The pre-shift off-the-clock work Hourly Employees performed directly benefitted Defendants, and was integral and indispensable to their job duties and responsibilities as Hourly Employees.

52.    Defendants' management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through Defendant Verra Mobility's metrics, compensation and timekeeping policies, and schedule adherence requirements.

**B.** **Meal Period Off-the-Clock Work**

53.     Defendants promised their Hourly Employees one unpaid 30-minute meal period each eight (8) hour shift.

54.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

55.     Defendants did not provide Hourly Employees with bona fide meal periods because they required their Hourly Employees to return to their computer stations prior to the end of their unpaid meal periods to log back into programs that timed out or froze while they were away from their computer and place themselves in a "ready" state so they could resume taking calls/handling correspondence promptly at the end of their scheduled meal periods.

56.     The login process during meal periods was truncated because some of the programs remained opened; however, Hourly Employees spent approximately ten (10) minutes performing this work during their unpaid meal periods. Thus, Defendants

maintained a common policy and plan pursuant to which they failed to pay Hourly Employees for no less than ten (10) minutes of work performed during their meal periods.

57.    The off-the-clock work Plaintiff and other Hourly Employees performed during their meal periods was compensable, directly benefitted Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Hourly Employees' job duties and responsibilities.

58.    Defendants' management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through Defendant Verra Mobility's metrics, compensation and timekeeping policies, and schedule adherence requirements.

## C. **Post-Shift Off-the Clock Work**

59.    Pursuant to Defendant Verra Mobility's policies, training, and direction, Plaintiff and all other Hourly Employees were required to clock-out at the end of their scheduled shift or as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems.

60.    After they clocked out for the day, Hourly Employees, including Plaintiff, were required to log-out of the various computer programs and software applications they utilized in performing their job duties and shut down their computer. This resulted Plaintiff and other Hourly Employees performing at least one (1) minute of off-the-clock work every shift.

61.    The post-shift off-the-clock work Plaintiff and other Hourly Employees

performed was compensable, directly benefitted Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Hourly Employees' job duties and responsibilities.

62.    Defendants' management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through Defendant Verra Mobility's metrics, compensation and timekeeping policies, and schedule adherence requirements.

**D.  The Off-the-Clock Work Results in Viable "Gap Time" Claims**

63.    "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2023 WL 4741649, at \*15-16 (D. Or. July 25, 2023); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

64.    Plaintiff, and all similarly situated Hourly Employees, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

65.    During the weeks that Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' agreements with its Hourly Employees.

## JOINT EMPLOYMENT ALLEGATIONS

66.    At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and other Hourly Employees that worked in Defendant Verra Mobility call centers.

67.    For example, while Defendant Impact Technology staffing agency connected Plaintiff to her employment with Defendant Verra Mobility, the Impact Technology website explains that, "At IMPACT Technology Recruiting, we are committed to providing **our partners** with the specialized recruiting support that they need to succeed."[4]

68.    Additionally, Defendant Verra Mobility's ID/Access Badge policy stated that "Verra Mobility Corporation **and its subsidiaries and affiliates** ('Verra Mobility') is pleased to present you with an entry and identification/access Badge to our Mesa Corporate and/or other Verra Mobility facilities which will allow you entry to the facility and your work area. It represents the company's trust in you and your empowerment as a **responsible employee of Verra Mobility** to safeguard and protect Verra Mobility's assets, proprietary information, and the personal information of our employees, our clients and their customers." (emphasis added). Defendant Verra Mobility's ID/Access Badge policy further stated, "This card will also serve as your visual identification **as an [sic] Verra Mobility employee** for access to other Verra Mobility facilities." (emphasis

---

[4] https://www.goimpacttechnology.com/solutions-services/ (last visited Oct. 6, 2023); *see also* https://www.goimpacttechnology.com/our-values/ (advising potential clients to "[p]artner with a company committed to [it] and [its] needs." (last visited Oct. 6, 2023).

added).

69.     Upon information and belief, this partnership involved an agreement between Defendant Verra Mobility and Defendant Impact Technology for an hourly wage within the parameters of what Defendant Verra Mobility paid its other Hourly Employees.

70.     At all relevant times, Defendant Verra Mobility retained the right and authority to terminate any Hourly Employees' employment, regardless of the staffing agency that connected it with the Hourly Employee. This is evidenced through Defendant Verra Mobility's performance standards and metrics, pursuant to which Defendant Verra Mobility could discipline its Hourly Employees for failure to comply.

71.     At all relevant times, Defendants managed and supervised the Hourly Employees and their job duties, and maintained Plaintiff and the Hourly Employees' employment records.

72.     At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the Hourly Employees' jobs.

73.     The unlawful conduct at issue in this case arises from Defendants' corporate policies for Hourly Employees.

## COLLECTIVE ACTION ALLEGATIONS

74.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly call center employees who worked for Defendants at any time during the past three years and required the use of a computer and programs and applications in order to perform*

*their job duties.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

75. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

76. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

77. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

78. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

79. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

80. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the

FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

    a.  Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members for all regular hours they worked off-the-clock in non-overtime workweeks;

    b.  Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

    c.  Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendant.

81.    Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

82.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

83.    The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work without compensation due to

uncompensated boot-up and shut-down time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

84.    Plaintiff estimates the FLSA Collective, including both current and former Hourly Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

85.    The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## RULE 23 ARIZONA STATE LAW CLASS ACTION ALLEGATIONS

86.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> All current and former hourly call center employees who worked for Defendants in Arizona during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.

(hereinafter referred to as the "Rule 23 Arizona Class"). Plaintiff reserves the right to amend this definition if necessary.

87.    The members of the Rule 23 Arizona Class are so numerous that joinder of

all Rule 23 Arizona Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Arizona Class members. Rule 23 Arizona Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

88.    There is a well-defined community of interests among Rule 23 Arizona Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Arizona Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether Rule 23 Arizona Class members performed unpaid pre-, mid-, and post-shift work activities, and if so, whether such work activities are compensable; and

b.    Whether Rule 23 Arizona Class members are owed wages for time spent performing pre-, mid-, and post-shift work activities, and if so, the appropriate amount thereof.

89.    Plaintiff's claims are typical of those of the Rule 23 Arizona Class in that she and all other Rule 23 Arizona Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Arizona Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Arizona Class members.

90.    Plaintiff will fully and adequately protect the interests of the Rule 23 Arizona Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel

have interests that are contrary to, or conflicting with, the interests of the Rule 23 Arizona Class.

91.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

92.    This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

93.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

94.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Arizona Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Arizona Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

95.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly call center employees who worked for Defendants during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

96.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds (if not thousands) of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

97.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b.    Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants

98. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

99. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

100. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

101. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced

networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

102.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

103.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

104.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

105.    At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

106.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

107.    At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

108.    At a minimum, Defendants were joint employers of Plaintiffs and the FLSA Collective members. Plaintiffs have supported this assertion by the exemplary facts contained herein.

109.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

110.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

111.    Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

112.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

113.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

114.    At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it

1  occurred, and the federally mandated overtime compensation for all work performed over

2  forty (40) hours per week.

3      115.    The off-the-clock work performed every shift by Plaintiff and the FLSA

4  Collective members was an essential part of their jobs and these activities and the time

5  associated with these activities was significant.

6      116.    In workweeks where Plaintiff and other FLSA Collective members worked

7  forty (40) hours or more, or close enough to forty (40) hours to have worked over forty

8  (40) hours when considering the uncompensated off-the-clock work time discussed

9  herein, all of this overtime should have been paid at the federally mandated rate of 1.5

10  times each employee's regular hourly wage, including a shift differential where

11  applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and

12  the FLSA Collective's regular hourly rate.

13      117.    As a result of Defendants' unlawful policies and practices, Plaintiff and the

14  FLSA Collective members were deprived of both straight-time and overtime wages in

15  violation of the FLSA.

16      118.    Defendants' violations of the FLSA were knowing and willful. Defendants

17  could have easily accounted for and properly compensated Plaintiff and the proposed

18  FLSA Collective members for all work activities, but did not.

19      119.    As a result of the foregoing, Plaintiff was injured and seeks appropriate

20  relief against Defendants including unpaid wages (including unpaid overtime), an

21  additional equal amount in liquidated damages (double damages), reasonable attorneys'

1   fees and costs, interest, and all other relief just and appropriate under the circumstances.

2                              **COUNT II**
                    **RULE 23 ARIZONA CLASS ACTION**
3   **VIOLATIONS OF THE ARIZONA MINIMUM WAGE ACT, A.R.S. §§ 23-**
    **363, *et seq.* AND THE ARIZONA WAGE ACT, A.R.S. §§ 23-350, *et seq.***

4
    120.    Plaintiff re-alleges and incorporates all previous paragraphs herein.
5
    121.    At all times relevant to the action, Defendants were employers covered by
6
    the mandates of the AWA, and Plaintiff and the Rule 23 Arizona Class were employees
7
    entitled to the AWA's protections.
8
    122.    The AWA entitles employees to compensation for every hour worked in a
9
    workweek.
10
    123.    The AMWA, A.R.S. § 23-363, provides that that employees are entitled to
11
    minimum wage, and pursuant to the Raise the Minimum Wage for Working Arizonians
12
    Act enacted by the Arizona voters in 2006, an employee may bring a civil action "no later
13
    than two years after a violation last occurs, or three years in the case of a willful violation,"
14
    A.R.S. § 23-364(H), and may recover "the balance of the wages owed, including interest
15
    thereon, and an additional amount equal to twice the underpaid wages." A.R.S. § 23-
16
    364(G).
17
    124.    The AWA, A.R.S. § 23-355(A), provides that "if an employer, in violation
18
    of this chapter, fails to pay wages due any employee, the employee may recover in a civil
19
    action against an employer or former employer an amount that is treble the amount of the
20
    unpaid wages."
21

28

125.    Defendants violated the AWA by regularly and repeatedly failing to compensate the Rule 23 Arizona Class for the time spent on the work activities described in this Complaint.

126.    The AWA, A.R.S. § 23-364(D), requires employers to "maintain payroll records showing the hours worked for each day worked, and the wages and earned paid sick time paid to all employees for a period of four years."

127.    The AWA, A.R.S. § 23-364(E), allows an enforcement action to be brought by "any private party injured by a violation of this article" and further provides for "a civil penalty of at least $250 dollars for a first violation, and at least $1000 [sic] dollars for each subsequent or willful violation…"

128.    Defendants failed to maintain and preserve accurate payroll or other Plaintiff and Rule 23 Arizona Class records pursuant to the Arizona Wage Acts because Defendants' records failed to include Plaintiff and the Rule 23 Arizona Class' compensable time discussed herein.

129.    The AWA, A.R.S. § 23-360, provides that an employer who has been ordered by a court to pay wages due to an employee and fails to do so within ten (10) days after the order becomes final, must pay the employee an amount equal to treble the amount of the unpaid wages plus interest at the legal rate.

130.    Defendants' uniform policy and practice, as described above, was/is willful, intention, unreasonable, arbitrary, and in bad faith.

131.    As a result, Plaintiff and the Rule 23 Arizona Class have and will continue

to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Arizona Class are entitled to recover unpaid wages owed, treble damages for unpaid wages, twice the damages for underpaid wages, costs and attorneys' fees, and other appropriate relief under the Arizona Wage Act and Arizona Minimum Wage Act at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

132.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

134.    Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

135.    For example, Defendants offered to compensate Plaintiff at a minimum of $20.00 per hour if she agreed to perform services for Defendants as an Hourly Employee. Plaintiff accepted Defendants' offer and performed her duties as Hourly Employees in

reliance on the offer.

136.     Defendants breached their contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

137.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $20.00 per hour within the applicable period.

138.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

139.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

140.     Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

141.     Plaintiff and the Rule 23 Nationwide Class members' remedies under the

FLSA are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

142.    Defendants also breached their duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

143.    As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

144.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

145.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

146.    At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

147.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

148.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

149.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

150.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

151.    Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

152.    Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

153.    Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

154.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

155.    As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.  An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Arizona Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the Arizona Minimum Wage Act and the Arizona Wage Act (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.  An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e.  An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Arizona Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f.  An Order declaring Defendants violated the FLSA;

g.  An Order declaring Defendants' violations of the FLSA were willful;

h.  An Order declaring Defendants violated Arizona wage-and-hour laws;

34

i. An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants was unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

j. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, the Rule 23 Arizona Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l. An Order awarding treble the amount of unpaid wages, plus legal interest, if Defendants fail to pay Plaintiff, the FLSA Collective, the Rule 23 Arizona Class, and the Rule 23 Nationwide Class court-ordered wages within 10 days of the order becoming final;

m. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n. An Order awarding such other and further relief as this Court deems appropriate.

DATED this 20th of November 2023                  Respectfully Submitted,

Jacqueline Mendez Soto, 022597
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
Jacqueline@bartonmendezsoto.com

Jesse L. Young (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Ave., Ste. 600
Kalamazoo, Michigan 49007

35

Telephone: 269-250-7500
jyoung@sommerspc.com

Alana A. Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

### JURY DEMAND

Plaintiff, Alicia Bonner, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED this 20th of November 2023                    Respectfully Submitted,

Jacqueline Mendez Soto, 022597
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
Jacqueline@bartonmendezsoto.com


Jesse L. Young (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Ave., Ste. 600
Kalamazoo, Michigan 49007

36

Telephone: 269-250-7500
jyoung@sommerspc.com

Alana A. Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

|  |  |  |
|---|---|---|
| **Alicia Bonner**, individually, and on behalf of others similarly situated, | : : : | Case No: |
| Plaintiff, | : : : | Hon. |
| v. | : : | |
| **Verra Mobility Corporation**, and **Impact Technology Recruiting Inc.**, | : : : | |
| Defendants. | : : : | |

**<u>CONSENT TO JOIN</u>**

1.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.     I worked for Verra Mobility Corporation and/or Impact Technology Recruiting Inc. as a Customer Service Representative and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

3.     I hereby designate the Sommers Schwartz, P.C. law firm to represent me in this lawsuit.

Signature:     *Alicia Bonner*

Print Name:     Alicia Bonner

Date Signed:     10/23/2023

1